## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREGORY CLEARY, JOHN DANIELE, ROB HEINDL, JASON MCGEE, DENNIS PARRISH, and GORDON TAYLOR on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN CAPITAL, LTD.,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br>**and**<br>**JURY TRIAL DEMAND** |

COME NOW Plaintiffs Gregory Cleary, John Daniele, Rob Heindl, Jason McGee, Dennis Parrish, and Gordon Taylor, ("Plaintiffs") on behalf of themselves and on behalf of a class of all others similarly situated, and submit this Class Action Complaint and Jury Trial Demand against American Capital, Ltd. (the "Defendant"). By and through their counsel, Plaintiffs allege as follows:

### <u>NATURE OF THE ACTION</u>

1.    This is a civil class action for the recovery by Plaintiffs and all others similarly situated of unpaid wages and benefits for sixty (60) calendar days pursuant to the Worker Adjustment and Retraining Notification (WARN) Act of 1988, 29 U.S.C. §§ 2101-2109. The Plaintiffs and the other similarly situated former employees were on the payroll of Constar International Inc., ("Constar") or Port City Electric Company ("Port City"). The Defendant, through its subsidiary shells NewStarcom Holdings, Inc. and NSC Holdings, Inc., owned and controlled Constar and Port City and terminated approximately one thousand two hundred (1,200) employees of Constar and Port City (including the Plaintiffs) when it ordered the closure of six or more facilities on or about October 31, 2007. Thus, the Defendant, together with NewStarcom Holdings, Inc., NSC Holdings, Inc., Constar, and Port City, was a "single

employer" under the WARN Act.  As such, the Defendant violated the WARN Act by failing to give the Plaintiffs and other similarly situated employees of the Defendant at least 60 days' advance notice of termination, as required by the WARN Act.  As a consequence, the Plaintiffs and other similarly situated employees of the Defendant are entitled under the WARN Act to recover from the Defendant their wages and ERISA benefits for 60 days, none of which has been paid.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C § 2104(a)(5).

3.      The headquarters of NewStarcom Holdings, Inc. was located in this district.

4.      Defendant American Capital, Ltd. ("Defendant") maintains an office within this district located at 161 Worcester Rd., Ste. 606, Framingham, Massachusetts 01701.

5.      Venue in this Court is proper pursuant to 29 U.S.C. § 2104(a)(5).

## THE PARTIES

6.      Plaintiff Gregory Cleary resides at 59 Chestnut St., Franklin, Massachusetts 02038.

7.      Plaintiff John Daniele resides at 21 Elm. St., Westborough, Massachusetts 01581.

8.      Plaintiff Rob Heindl resides at 216 Northcliff Way, Greenville, South Carolina 29617.

9.      Plaintiff Jason McGee resides at 2700 East Garner Road, Raleigh, North Carolina 27610.

10.      Plaintiff Dennis Parrish resides at 2628 White Road, Wilmington, North Carolina 28411.

11.     Plaintiff Gordon Taylor resides at 5410 Saddlewood Lane, Mint Hill, North Carolina 28227.

12.     Upon information and belief, at all relevant times, Defendant was a Delaware corporation headquartered at 2 Bethesda Metro Center, 14th Floor, Bethesda, Maryland. Defendant also maintains an office within this district located at 161 Worcester Rd., Ste. 606, Framingham, Massachusetts 01701.

13.     Upon information and belief, Constar International, Inc. ("Constar") was a Massachusetts corporation located at 661 Pleasant Street, Norwood, Massachusetts 02062 ("Constar Facility").

14.     Upon information and belief, until on or about October 31, 2007, the Defendant, as a "single employer", employed at least 50 employees who worked at or reported to the Constar Facility who were employed for an average of 20 hours per week and for at least 6 of the 12 months preceding September 1, 2007.

15.     Upon information and belief, Port City Electric Company ("Port City") was a Delaware corporation with its principal office located at 2550 Charlotte Highway, Mooresville, North Carolina 28815.  In addition to its facility located in Mooresville, NC, Port City also maintained and operated multiple facilities including but not limited to facilities located in N. Charleston, SC, Spartanburg, SC, Raleigh, NC, and Wilmington, NC (collectively the "Port City Facilities.").

16.     Upon information and belief, until on or about October 31, 2007, the Defendant, as a "single employer", employed at least 50 employees who worked at or reported to Port City's facility located at 2550 Charlotte Highway, Mooresville, North Carolina 28815 ("Mooresville

3

Facility") who were employed for an average of 20 hours per week and for at least 6 of the 12 months preceding September 1, 2007.

17.     Upon information and belief, until on or about October 31, 2007, the Defendant, as a "single employer", employed at least 50 employees who worked at or reported to Port City's facility located at 7264 Peppermill Parkway, N. Charleston, South Carolina 29418 ("N. Charleston Facility") who were employed for an average of 20 hours per week and for at least 6 of the 12 months preceding September 1, 2007.

18.     Upon information and belief, until on or about October 31, 2007, the Defendant, as a "single employer", employed at least 50 employees who worked at or reported to Port City's facility located at 105 Southwest Drive, Spartanburg, South Carolina 29303 ("Spartanburg Facility") who were employed for an average of 20 hours per week and for at least 6 of the 12 months preceding September 1, 2007.

19.     Upon information and belief, until on or about October 31, 2007, the Defendant, as a "single employer", employed at least 50 employees who worked at or reported to Port City's facility located 632 Pershing Road, Raleigh, North Carolina 27608 ("Raleigh Facility") who were employed for an average of 20 hours per week and for at least 6 of the 12 months preceding September 1, 2007.

20.     Upon information and belief, until on or about October 31, 2007, the Defendant, as a "single employer," employed at least 50 employees who worked at or reported to Port City's facility located at 2131 S. 17th St., Wilmington, North Carolina 28401 ("Wilmington Facility") who were employed for an average of 20 hours per week and for at least 6 of the 12 months preceding September 1, 2007.

21.     Upon information and belief, NewStarcom Holdings, Inc. was a Massachusetts corporation located at the Constar Facility.

22.     Upon information and belief, NSC Holdings, Inc. was a Delaware corporation with offices located at the Constar Facility.

23.     Plaintiffs Gregory Cleary and John Daniele were nominally employed by Constar and worked at or reported to the Constar Facility until their termination on or about October 31, 2007.

24.     Plaintiff Rob Heindl was nominally employed by Port City and worked at or reported to the Spartanburg Facility until approximately October 1, 2007 when he was temporarily reassigned to the Raleigh Facility where he worked at or reported until his termination on or about October 31, 2007.

25.     Plaintiff Jason McGee was nominally employed by Port City and worked at or reported to the Raleigh Facility until his termination on or about October 31, 2007.

26.     Plaintiff Dennis Parrish was nominally employed by Port City and worked at or reported to the Wilmington Facility until his termination on or about October 31, 2007.

27.     Plaintiff Gordon Taylor was nominally employed by Port City and worked at or reported to the Mooresville Facility until his termination on or about October 31, 2007.

28.     Upon information and belief, on or about October 31, 2007, Defendant terminated the employment of all the employees who worked at or reported to the Constar Facility without cause, including Plaintiffs and at least 50 employees who worked at or reported to the Constar Facility for an average of 20 or more hours per week and for at least 6 of the 12 months preceding September 1, 2007.

29.     Upon information and belief, on or about October 31, 2007, Defendant terminated the employment of all the employees who worked at or reported to the Mooresville Facility without cause, including at least 50 employees who worked at or reported to the Mooresville Facility for an average of 20 or more hours per week and for at least 6 of the 12 months preceding September 1, 2007.

30.     Upon information and belief, on or about October 31, 2007, Defendant terminated the employment of all the employees who worked at or reported to at the N. Charleston Facility without cause, including at least 50 employees who worked at or reported to the N. Charleston Facility for an average of 20 or more hours per week and for at least 6 of the 12 months preceding September 1, 2007.

31.     Upon information and belief, on or about October 31, 2007, Defendant terminated the employment of all the employees who worked at or reported to the Spartanburg Facility without cause, including at least 50 employees who worked at or reported to the Spartanburg Facility for an average of 20 or more hours per week and for at least 6 of the 12 months preceding September 1, 2007.

32.     Upon information and belief, on or about October 31, 2007, Defendant terminated the employment of all the employees who worked at or reported to the Raleigh Facility without cause, including at least 50 employees who worked at or reported to the Raleigh Facility for an average of 20 or more hours per week and for at least 6 of the 12 months preceding September 1, 2007.

33.     Upon information and belief, on or about October 31, 2007, Defendant terminated the employment of all the employees who worked at or reported to the Wilmington Facility without cause, including at least 50 employees who worked at or reported to the Wilmington

Facility for an average of 20 or more hours per week and for at least 6 of the 12 months preceding September 1, 2007.

34.     On or about October 31, 2007, Plaintiffs' and other similarly situated employees' employment was terminated as part of plant closings as defined by 29 U.S.C. § 2101(a)(2), for which they were entitled to receive 60 days advance written notice under the WARN Act.

35.     At or about the time the Plaintiffs were terminated, approximately 1,200 other similarly situated employees who worked at or reported to the Constar Facility and Port City Facilities (including but not limited to the Mooresville Facility, N. Charleston Facility, Spartanburg Facility, Raleigh Facility, Wilmington Facility and any other facilities where at least 50 non-part-time employees each worked at or reported to) were terminated.

36.     Pursuant to 29 U.S.C. § 2104(a)(5), the Plaintiffs maintain this action on behalf of themselves and on behalf of each of the other similarly situated former employees.

37.     Each of the other former employees on whose behalf this action is brought is similarly situated to the Plaintiffs in respect to his or her rights under the WARN Act.

38.     Defendant was required by the WARN Act to give the Plaintiffs and the other similarly situated former employees at least 60 days advance written notice of their respective terminations.

39.     Prior to their termination on or about October 31, 2007, neither the Plaintiffs nor the other similarly situated former employees received written notice that complied with the requirements of the WARN Act.

40.     Defendant failed to pay the Plaintiffs and the other similarly situated former employees their respective wages, salary, commissions, bonuses, accrued holiday pay vacation which would have accrued for sixty (60) days following their respective terminations without

notice and failed to make 401(k) contributions and provide them with health insurance coverage and other employee benefits.

41.     Plaintiffs bring this action under Rule 23(a) and (b) of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons who worked at or reported to the Constar Facility or Port City Facilities (including but not limited to the Mooresville Facility, N. Charleston Facility, Spartanburg Facility, Raleigh Facility, Wilmington Facility and any other facilities where at least 50 non-part-time employees each worked at or reported to) and were terminated without cause on or about October 31, 2007 or thereafter as the result of, or as the reasonably foreseeable consequence of, the plant closings ordered by Defendant on or about October 31, 2007, and who are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5) (the "Class").

42.     The persons in the Class identified above ("Class Members") are so numerous that joinder of all members is impracticable.

43.     The claims of the representative parties are typical of the claims of the Class Members.

44.     The representative parties will fairly and adequately protect the interests of the Class.

45.     The Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

46.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the context of WARN Act litigation, where individual plaintiffs and class members may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

47.     There are questions of law and fact common to the Class Members that predominate over any questions solely affecting individual members of the Class, including but not limited to:

a.  Whether the Defendant is an "Employer" under the WARN Act;

b.  Whether Defendant, NewStarcom Holdings, Inc., NSC Holdings, Inc., Constar, and Port City were a "single employer" under the WARN Act;

c.  Whether the October 31, 2007 closure of the Constar Facility and Port City Facilities (including but not limited to the Mooresville Facility, N. Charleston Facility, Spartanburg Facility, Raleigh Facility, Wilmington Facility and any other facilities where at least 50 non-part-time employees each worked at or reported to) constituted "plant closings" under the WARN Act;

d.  Whether Defendant provided 60 days' advance written notice of the plant closings at the Constar Facility and Port City Facilities (including but not limited to the Mooresville Facility, N. Charleston Facility, Spartanburg Facility, Raleigh Facility, Wilmington Facility and any other facilities where at least 50 non-part-time employees each worked at or reported to) to those who were terminated as the result of such closures;

e.  Whether any written notice of the plant closings provided to those terminated as the result of such closures included all of the content required by the WARN Act; and

f.  Whether the Defendant was subject to any of the statutory affirmative defenses provided for in the WARN Act.

## CLAIM FOR RELIF

48.     At all relevant times, the Defendant employed 100 or more employees, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by 29 U.S.C. § 2101 and as a single employer, employed more than 50 employees, exclusive of part-time employees, who worked at or reported to each of the Constar and Port City Facilities (including but not limited to the Mooresville Facility, N. Charleston Facility, Spartanburg Facility, Raleigh Facility, Wilmington Facility and any other facilities where at least 50 non-part-time employees each worked at or reported to).

49.     At all relevant times, the Defendant was the "employer," of the Class Members as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. 639.3(a)(1).

50.     At all relevant times, the Defendant was a "single employer" with the Class Members' nominal employers Constar and Port City under 20 C.F.R. 639.3(a)(2).

51.     Defendant shared common ownership with the Class Members' nominal employers Constar and Port City.

    a.  In 2007, Defendant owned 70% of the common stock of New Starcom Holdings, Inc.

    b.  In 2007, New Starcom Holdings, Inc. owned 100% of the common stock of NSC Holdings, Inc.

    c.  In 2007, NSC Holdings, Inc. owned 100% of the common stock of Constar and Port City.

52.     Defendant shared common officers and/or directors with the Class Members' nominal employers Constar and Port City.

a.  On or about October 31, 2007, Steve Price simultaneously served as director of Defendant, director of Constar, and director of Port City.

b.  On or about October 31, 2007, Mark Fiske simultaneously served as director of Defendant, director of Constar, and director of Port City.

c.  On or about October 31, 2007, Craig Moore simultaneously served as director of Defendant, director of Constar, and director of Port City.

d.  On or about October 31, 2007, Gordon O'Brien simultaneously served as director of Defendant, director of Constar, and director of Port City.

53.  Defendant exercised *de facto* control over the Class Members' nominal employers Constar and Port City.

a.  Defendant created an "Operations Team", which was responsible for managing the operations of distressed portfolio companies of Defendant's.  In 2007, Defendant's "Operations Team" lead by Steve Price, Mark Fikse, Allison Young (an employee of Defendant), Michael Ranson (an employee of Defendant), Myung Yi (an employee of Defendant), and Omar Syed (an employee of Defendant) managed the operations of Constar and Port City including preparing and approving forecasts and/or business projections for Constar and Port City, reassigning Port City and Constar employees to other facilities, preparing weekly cash flow reports for Constar and Port City, and hiring new officers for Port City.

b.  Defendant made all major decisions for Constar and Port City without approval by the boards of directors of Constar and Port City by resolution or consent in lieu of a resolution:

i.   Without approval by the boards of directors of Constar or Port City, Defendant hired Dennis Dugan as the president and chief executive officer of Constar and Port City.

ii.   Without approval by the boards of directors of Constar or Port City, Defendant selected Houlihan Lokey as the investment bank to facilitate the sale of New Starcom Holdings, Inc. (including Constar and Port City).

iii.   Defendant created an "Investment Committee" to determine the appropriate price, terms and conditions of sales of Defendant's portfolio companies, including New Starcom Holdings, Inc.  Without approval by the boards of directors of Constar or Port City, Defendant, through its Investment Committee, determined the terms under which New Starcom Holdings, Inc. (including Constar and Port City) would be sold.

iv.   Without approval by the board of directors of Constar or Port City, Defendant rejected the offer of Marlin Equity Partners to purchase New Starcom Holdings, Inc. (including Constar and Port City).

v.   Without approval by the board of directors of Constar or Port City, Defendant ordered plant closings at the Constar and Port City Facilities on or about October 31, 2007.

vi.   Without approval by the board of directors of Constar or Port City, Defendant ordered simultaneous bankruptcy filings of New Starcom Holdings, Inc., NSC Holdings, Inc., Constar and Port City.

54.    The operations of Constar and Port City were dependent on Defendant:

    a.   Defendant purchased a $5 million irrevocable letter of credit in favor of Constar's and Port City's surety, CNA, in order to secure bonding on Constar's and Port City's contracts.

    b.   Defendant's employees audited the company credit card bills of Constar's CEO.

    c.   Defendant's employees prepared and approved forecasts and/or business projections and weekly cash flow reports for Constar and Port City.

    d.   Defendant's employees, who were not members of the boards of directors of Constar or Port City, attended the meetings of those boards.

55.    On or about October 31, 2007, the Defendant ordered "plant closings", as that term is defined by 29 U.S.C. § 2101(a), at the Constar and Port City Facilities (including but not limited to the Mooresville Facility, N. Charleston Facility, Spartanburg Facility, Raleigh Facility, Wilmington Facility and any other facilities where at least 50 non-part-time employees each worked at or reported to).

56.    Defendant's closure of the Constar and Port City Facilities (including but not limited to the Mooresville Facility, N. Charleston Facility, Spartanburg Facility, Raleigh Facility, Wilmington Facility and any other facilities where at least 50 non-part-time employees each worked at or reported to) resulted in an "employment loss", as that term is defined by 29 U.S.C. §2101(a), at each of the Constar and Port City Facilities (including but not limited to the Mooresville Facility, N. Charleston Facility, Spartanburg Facility, Raleigh Facility, Wilmington Facility and any other facilities where at least 50 non-part-time employees each worked at or reported to) for at least 33% of its workforce, and at least 50 of its employees, excluding (a) employees who worked less than six of the twelve months prior to the date WARN notice was

required to be given and (b) employees who worked an average of less than 20 hours per week during the 90-day period prior to the date WARN notice was required to be given.

57.     The Plaintiffs and each of the Class Members, who were employed by Defendant and then terminated by Defendant as a result of Defendant's executing plant closings at the Constar and Port City Facilities on or about October 31, 2007 were "affected employees" as defined by 29 U.S.C. § 2101.

58.     The Plaintiffs and each of the Class Members are "aggrieved employees" of the Defendant as that term is defined in 29 U.S.C. § 2101(a)(7).

59.     Pursuant to 29 U.S.C. § 2102 and 20 C.F.R. §§ 639.1 - 639.10, Defendant was required to provide at least 60 days' prior written notice of the termination or notice as soon as practicable, to the affected employees, explaining why the sixty (60) days prior notice was not given.

60.     Defendant failed to give at least sixty (60) days prior written notice of the October 31, 2007 plant closings at the Constar and Port City Facilities (including but not limited to the Mooresville Facility, N. Charleston Facility, Spartanburg Facility, Raleigh Facility, Wilmington Facility and any other facilities where at least 50 non-part-time employees each worked at or reported to) and the resulting terminations, in violation of the WARN Act.

61.     The Defendant failed to pay the Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following their respective terminations, and failed to make the pension and 401(k) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.

14

62.     As a result of Defendant's failure to pay the wages, benefits and other monies as asserted, the Class Members' were damaged in an amount equal to the sum of their unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of the Class Members' terminations.

63.     Plaintiffs hereby demand a jury trial of all issues that may so be tried.

WHEREFORE, the Plaintiffs and Class Members demand judgment against the Defendant as follows:

a.     An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and 401(k) contributions and other ERISA benefits, for sixty (60) working days following each member employee's termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. §2104(a)(1)(A);

b.     Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b) and the WARN Act, 29 U.S.C. § 2104(a)(5), Plaintiffs and the Class Members constitute a single class;

c.     Interest as allowed by law on the amounts owed under the preceding paragraphs;

d.     The reasonable attorneys' fees and the costs and disbursements the Plaintiffs incur in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6); and

e.     Such other and further relief as this Court may deem just and proper.

Dated: October 21, 2013

Respectfully submitted,

/s/ Jesse I. Redlener
DALTON & FINEGOLD, LLP
Jesse I. Redlener (BBO #646851)
34 Essex Street
Andover, MA 01810
P: (978) 269-6420
F: (978) 824-9362
jredlener@dfllp.com

LANKENAU & MILLER, LLP
Stuart J. Miller
132 Nassau Street, Suite 423
New York, NY 10038
P: (212) 581-5005
F: (212) 581-2122

THE GARDNER FIRM, P.C.
Mary E. Olsen
M. Vance McCrary
David C. Tufts
210 South Washington Avenue
Mobile, AL 36602
P: (251) 431-8100
F: (251) 433-8181

Cooperating Counsel for
THE NLG MAURICE AND JANE SUGAR
LAW CENTER FOR ECONOMIC AND
SOCIAL JUSTICE, a non-profit law firm
4605 Cass Avenue
Detroit, MI 48201
P: (313) 993-4505

*Attorneys for Plaintiffs*